IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

STEVEN HODA, #315209                                                         PLAINTIFF

v.                                              CIVIL ACTION NO.  1:09cv772-LG-RHW

ROBERT EMMIL, Deputy                                                         DEFENDANT

### REPORT AND RECOMMENDATION

Before the Court is [39] the Defendant's November 16, 2010 motion for summary judgment in which Deputy Robert Emmil[1] asks the Court to find as a matter of law that his actions on October 29, 2009 did not constitute excessive force.  In the alternative, Emmil asks the Court to recognize his qualified immunity as he was a duly appointed deputy acting within the scope of his duties, and the actions of which Hoda complains were objectively reasonable under the circumstances.  Plaintiff's response to the motion was due by December 3, 2010, but Plaintiff has neither responded nor requested any extension of time to do so.  However, since the motion is dispositive in nature, the Court must address it on the merits.  *L.U. Civ.R.* 7(b)(3)(E).

Procedural History and Facts

On November 18, 2009, Steven Hoda filed this 42 U.S.C. § 1983 prisoner's civil rights lawsuit claiming Deputy Emmil violated his constitutional rights on October 29, 2009, by using excessive force in attempting to force Hoda to withdraw his arm from the tray hole of the door of his cell.  Hoda was confined at the Harrison County Adult Detention Center (HCADC) awaiting trial on a murder charge.  In addition to Emmil, Hoda originally sued Harrison County Sheriff Melvin Brisolara and Warden Donald Cabana because they were in charge of the jail.  Following

---

[1]This opinion spells the Deputy's surname as it appears in the docket, although the motion spells it "Immel."

an omnibus/Spears hearing on February 25, 2010, the undersigned issued [24] a recommendation that Brisolara and Cabana be dismissed from the case. On March 22, 2010, Chief District Judge Guirola adopted the report and recommendation, dismissing without prejudice Plaintiff's claims against Defendants Brisolara and Cabana, and leaving Emmil as the sole defendant. [28]

The HCADC Medication Policy requires that all inmates produce an ID wristband to receive their medications. [39-2, p. 2] Once the inmate's identity is verified, he extends a cup of water, and the nurse on duty places his prescribed medication in the cup. *Id.* The inmate must then drink the water, swallowing the pill(s). The officer escorting the nurse then inspects the inmate's mouth to ensure he has swallowed the medicine.

On October 29, 2009, Nurse Rachel Betts, escorted by Deputy Leone, was dispensing evening medication in B-Block, A-Section of the HCADC, where Steven Hoda was housed in cell 101. At that time, Hoda had an effective prescription for Doxepin,[2] which, according to Hoda, stops the voices in his head. However, Hoda did not have his ID wristband. Hoda states he lost his ID wristband two to three weeks earlier and that he had requested, and was waiting for, a replacement. Hoda further states that medical staff, including Nurse Betts, had continued to provide him with his daily medication in the interim despite his lack of an ID wristband. On October 29, 2009, Nurse Betts asked Hoda to produce his ID wristband, and when he could not do so, the nurse did not give him his medication.

According to the affidavit of Deputy Leone, and Hoda's own deposition testimony, after Hoda advised that he had no ID wristband, Hoda said to Leone that "he was sorry to do this to [Leone]" and extended his arm through the tray hole to prevent its being closed. [39-3, p. 2], [39-5] Leone states in the incident report attached to his affidavit that he repeatedly asked Hoda

---

[2]Doxepin is reportedly used to treat depression and anxiety.

to withdraw his arm from the tray hole, but he refused.  Hoda admitted during the omnibus hearing in this case that Leone ordered him to withdraw his arm from the tray hole and he refused to comply.  Deputy Robert Emmil was one of the officers who responded to Leone's call for assistance in dealing with Hoda.

As Emmil approached Hoda's cell, Leone told him that Hoda would not produce his ID wristband.  [39-3, p. 3]  When Emmil arrived at the cell door, Hoda was sitting on the floor, with his arm extended through the horizontal tray hole in the door, with his arm bent at the elbow and his hand raised toward the ceiling.  *Id*.  The tray hole door is hinged at the bottom, and must be raised to close it.  The sworn affidavits of deputies Leone and Emmil state that Emmil had clearly and authoritatively instructed Hoda to withdraw his arm well before exerting force in raising the tray hole door against Hoda's arm.  [39-2, p. 3; 39-3, p. 2]  Although Hoda stated in his deposition that the first time an officer instructed him to remove his arm from the tray hole was after Emmil had already began to apply force, his own omnibus hearing testimony that Leone had ordered him to take his arm out of the tray hole contradicts that statement.  [39-5, pp. 7-8]  When Hoda persisted in keeping his arm extended into the tray hole, Emmil raised the tray hole door up against Hoda's arm and pressed against it until Hoda withdrew his arm back into his cell.

Hoda conceded that he knew he was being noncompliant and disobedient in putting his arm through the tray hole.  *Id.*  Indeed, at the omnibus hearing, Hoda testified he had on a prior occasion stuck his arm out the tray hole door and refused to withdraw it because he wanted a sandwich, and on that occasion officers had to use pepper spray to make him comply with orders to pull his arm back inside his cell.  Thus, while there is a dispute as to whether Emmil instructed Hoda to withdraw his arm from the tray hole before Emmil began pushing up on the door, or

whether Emmil gave Hoda adequate time to comply after his initial command, Hoda admitted in open court that Leone had told him to put his arm back inside his cell, and there is no dispute that Hoda was well aware from his prior experience that what he was doing was wrong before he put his arm through the tray hole, and that his refusal to withdraw it was likely to lead to use of force to bring him into compliance.

## Summary Judgment Standard

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law.

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). On a motion for summary judgment, the Court considers "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). The Court may grant a motion for summary judgment which is accompanied by competent supporting evidence if the opposing party fails to present controverting evidence. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied*, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed. 2d 371 (1992).

The moving party must show the absence of a genuine issue of material fact by affidavit or other evidentiary materials. See *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2552; *Anderson*, 477

U.S. at 250, 106 S.Ct. at 2511 n.2; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). To find there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could find for the nonmoving party, *i.e.*, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for him. *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2510-11.

If the movant establishes the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little*, 37 F.3d at 1075, *citing Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553-54. The nonmovant cannot discharge this burden by simply referring to allegations or denials in his pleadings, but must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists. See *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Fed.R.Civ.P.* 56(e). If the nonmovant fails to present evidence showing a genuine issue of material facts exists, "the summary judgment motion must be granted." *Little*, 37 F.3d at 1075.

Excessive Force

Inmates are protected from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. To establish a constitutional violation for excessive force, the plaintiff must show that the defendant unnecessarily and wantonly inflicted pain on him. The issue here is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 998 (1992), citing *Whitley v. Albers*, 475 U.S. 312, 320-321, 106 S.Ct.

1078, 1084-1085 (1986).  The determination of this issue involves a subjective analysis of the defendant and his state of mind at the time.  To act "maliciously" means to intentionally do a wrongful act without just cause or excuse, with an intent to inflict injury or under circumstances that show an evil intent.  Factors considered in determining whether jail officers' actions unnecessarily and wantonly inflicted pain on a prisoner include (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury suffered, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the forceful response.  *Whitley v. Albers*, 106 S.Ct. at 1085.  Applying these factors to the case at bar leads the undersigned to conclude that Hoda has failed to carry his burden of showing a genuine issue of material fact as to whether Emmil violated his constitutional rights.

Hoda's defiant and disruptive behavior clearly presented a situation requiring prompt and decisive action to restore order and discipline in the cell block.  Hoda knew he was not to put his arm through the tray hole door – in fact, he had been pepper sprayed for a similar incident in the past; he admittedly refused to comply with Deputy Leone's orders to remove his arm from the hole on October 29, 2009 before Deputy Emmil arrived on the scene.  Officers could not enter the cell to make Hoda comply because his cell had a motor-operated sliding metal door which slides from left to right, and any attempt to open the cell door would have dragged Hoda across the cell floor with his arm extended through the tray hole in the cell door, thus exposing him to substantially greater risk of harm.

Hoda's injury from the incident consisted of bruising and abrasions to his inner right arm, which jail medical staff treated with ice.  He was later seen for a swollen right arm at a local hospital, where xrays revealed no acute abnormality, no fracture or subluxation, no dislocation

and no gross joint effusion.  The doctor recommended that Hoda perform range of motion exercises three times a day, which, according to Hoda consisted of pulling on a "big rubber band."  Hoda testified he did the exercises for a month and a half to two months, and quit because he no longer needed to do them.  [39-5, pp. 3, 10]

The undersigned finds Emmil's action in pressing upward on the cell tray door to make Hoda withdraw his arm from the tray hole was reasonable under the circumstances.  The evidence before the Court shows not a malicious intent in the use of force, but a good faith effort and reasonable use of force to bring Hoda into compliance and restore discipline and order to the jail.  The undersigned is of the opinion that Hoda has failed to show a constitutional violation on his claim of excessive force.

## Qualified Immunity

Law enforcement officers are entitled to assert the defense of qualified immunity for all acts and omissions which occur in the course of their official duties.  *Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).  There is no dispute that Emmil was acting within the course of his official duties when he tried to force Hoda to remove his arm from the tray hole door.  The question, then, is whether Emmil's conduct in pushing up on the tray door was objectively reasonable in light of clearly established law.

> To overcome the affirmative defense of qualified immunity, a plaintiff must show that the government official violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  Qualified immunity shields from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). If the law at the time of a constitutional violation does not give the officer "fair notice" that his conduct is unlawful, the officer is immune from suit. *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004).  This standard thus protects an officer with a mistaken, yet reasonable, understanding of the law from the "hazy border between excessive

      and acceptable force." *Id* at 201, 125 S.Ct. at 600 (quoting *Saucier v. Katz,* 533
      U.S. 194, 206, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001)).

*Manis v. Lawson*, 585 F.3d 839, 845-846 (5th Cir. 2009).  The undersigned finds from the evidence presented, that in light of the circumstances with which Emmil was confronted and clearly established law, reasonable officers could disagree as to whether Emmil's actions violated Hoda's constitutional rights, thus immunity applies.  *Whiting v. Tunica County*, 222 F.Supp. 809, 818 (N.D. Miss. 2002).  While the undersigned is of the opinion that Hoda has failed to show Emmil used excessive force against him, even were it otherwise, the undersigned would find Emmil entitled to qualified immunity.

## RECOMMENDATION

     For the reasons stated above, the undersigned recommends that Defendant Robert Emmil's motion for summary judgment be granted and this case, dismissed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

     Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file written objections to the Report and Recommendation.  A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned District Judge.  Within seven days of service of the objection, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.

     An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections.  A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual

finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 29th day of July, 2011.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE